M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>JASON PAUL ONIS KING KIVI,<br><br>        Defendant. | Case No. A05-0106 CR (JWS)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS** |

## I.    Introduction

On July 13, 2005, Joseph Murphy, a parole officer with the Kenai Adult Probation Office, conducted a warrantless search of Jason Kivi's residence.  During the search, Officer Murphy located two firearms which form the basis of the current federal charges pending against Mr. Kivi.  The discovery indicates that the basis for the search stemmed from a Soldotna Police Department (SPD) activity log that Officer Murphy received on July 12, 2005.  The log indicated that on July 11, 2005, an individual by the name of Ethan Evans reported that a firearm had been stolen from his residence between May 27, 2005, and May 30, 2005.  The log also listed Jason Kivi as a suspect in the theft.

At the time of the report, Mr. Kivi was on state parole.  As a state parolee, Mr. Kivi was subject to warrantless search by his probation officer pursuant to Alaska Stat. § 33.16.150(b).

On July 13, 2005, Officer Murphy followed up on the information contained in the police log.  Officer Murphy learned that when Mr. Evans came to the Soldotna Police Department to report his missing gun, he was accompanied by a man named Robert Patten.  Mr. Patten reported to the police that he had made some telephone calls regarding the firearm, and was told by Emmy J. King that she heard Isaac Truesdell had taken the weapon from Mr. Evans' residence.  In addition, she heard that Mr. Truesdell had traded the gun to a person known only as "Jamar."  Ms. King also reported that she heard that "Jamar" traded it to "Emily" and that "Emily" gave the firearm to her boyfriend, Jason.  Based on this information, Officer Murphy decided to conduct a parole search of Mr. Kivi's residence.

## II.    WARRANTLESS PAROLE SEARCH MUST BE SUPPORTED BY REASONABLE SUSPICION

In <u>United States v. Knights</u>, 534 U.S. 112, 122 (2001), the Supreme Court confirmed that a parolee has an objectively-reasonable exception of privacy.  The Court found a parolee's privacy interest to be "significantly diminished" – but not extinguished. <u>Id.</u> at 118-19.  <u>Knights</u> required an objective reasonableness analysis conducted by "examining the totality of the circumstances, with [a] probation search condition being a salient circumstance."  <u>Id.</u>  As the Ninth Circuit pointed out in <u>United States v. Crawford</u>, 323 F.3d 700, 710 (2003), "[A] <u>reduced</u> expectation of privacy is substantially different from an <u>extinguished</u> expectation of privacy.  Although parolees are subject to specific

constraints on their privacy that would not be constitutional if applied to the public at large, their privacy interests are not eliminated entirely. . . . It would be unreasonable to expect a parolee to negotiate the transition into the life of a normal citizen without some measure of the privacy that normal citizens take for granted." (Internal citations omitted.) The appropriate standard that applies to warrantless parole searches is reasonable suspicion. United States v. Crawford, 323 F.3d 700, 714 (9th Cir. 2003).

### III.    Tip Given by Patten Failed to Rise to the Level of Reasonable Suspicion

"[R]easonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Florida v. J.L., 529 U.S. 266, 271 (2000). The tip must predict the suspect's future movements and the future movements should be corroborated by independent police observations. Id.

In this case, Murphy relied solely on the information the police received from Mr. Patten by way of Emmy King. Neither Patten nor King are proven or known informants whose credibility has been tested. King told Patten that Kivi had the firearm, but provided no further details regarding the source of her information or how she obtained the information. "Because hearsay from an unknown informant is highly suspect, officers must provide some basis to believe the tip is true" before such information may support a finding of reasonable suspicion. See United States v. Clark, 31 F.3d 831, 834-35 (9th Cir. 1994).

In Florida v. J.L., 529 U.S. 266, 120 S. Ct. 1375 (2000), the Supreme Court held that police may not rely on "the bare report of an unknown, unaccountable informant who neither explained how he knew about the [criminal activity] nor supplied any basis for believing he had inside information" to authorize an investigatory stop.

In <u>Florida v. J.L.</u>, the police received information that a young black male at a particular bus stop and wearing a plaid shirt was carrying a gun.  When the police went to that bus stop, they observed three black males, one of whom was wearing a plaid shirt. Aside from the tip, the officers had no reason to believe that any of the males were engaged in criminal activity.  Nevertheless, one of the officers approached and frisked the male wearing the plaid shirt and recovered a firearm.

In <u>J.L.</u>, the Court rejected the state's argument that the verification of objectively observable innocent details from an anonymous source can support a finding of reasonable suspicion.  The Court recognized that "[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense:  It will help the police correctly identify the person whom the tipster means to accuse.  Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity.  The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."  <u>Id.</u> at 1379.

Although the tip in <u>Florida v. J.L.</u> was from an anonymous caller, the same "sufficient indicia of reliability" test applies to any unproven tipster.  <u>United States v. Thomas</u>, 211 F.3d 1186, 1189 (9th Cir. 2000) ("Courts will uphold an investigatory stop based on a tip or other secondary information only when the information possesses sufficient indicia of reliability that are independently corroborated by the police.").  The information received by the Soldotna Police "provided no predictive information and therefore left the police without means to test the [tipster's] knowledge or credibility."  <u>Id.</u> at 1380.

4

As in <u>Florida v. J.L.</u>, here all the police had to go on was the "bare report of an unknown, unaccountable informant who neither explained how [she] knew about the gun nor supplied any basis for believing [she] had inside information about the [defendant]." <u>Id.</u>  The tip failed the necessary indicia of reliability in order to justify a warrantless search.  Because there was no basis to support the search, any evidence or statements obtained pursuant to the search must be suppressed.  <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).

Based on the foregoing, this court should order the suppression of the two guns obtained as the result of a warrantless search of Mr. Kivi's home, as well as his statements made following the fruits of the illegal search.

DATED this 17th day of January, 2005.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Georgia Bar No. 316531
550 West 7th Avenue, Suite 1600
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mj_haden@fd.org