DEBORAH M. SMITH
Acting United States Attorney

BRYAN SCHRODER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513
Phone:  (907) 271-5071
Fax: (907) 271-1500
E-mail: bryan.schroder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 3:05-cr-106-JWS |
| ) | |
| Plaintiff, ) | **GOVERNMENT'S** |
| ) | **OPPOSITION TO** |
| vs. ) | **DEFENDANT KIVI'S** |
| ) | **MOTION TO SUPPRESS** |
| JASON PAUL ONIS KING KIVI ) | **STATEMENTS** |
| ) | |
| Defendant. ) | |
| ) | |

      COMES NOW the United States of America, by and through the

undersigned Assistant U.S. Attorney, and responds in opposition to defendant

Jason Kivi's motion to suppress the results of the search of the Defendant's

residence on July 13, 2005, plus statements made by the defendant after his arrest.

**I.     INTRODUCTION**

    **A.     Factual Background**

On July 11, 2005, Mr. Ethan Evans reported the theft of a firearm to the Soldotna Police Department. The weapon was an Israeli Military Industries (IMI) "Baby Desert Eagle" .45 ACP semi-automatic handgun, serial number 3311082. Mr. Evans personally came to the Soldotna Police Department to report the theft. He reported that the weapon, along with two loaded magazines, was stolen from his home in late May 2005.

Mr. Evans was accompanied by Mr. Robert Patten, who had specific information that the weapon had been taken from Mr. Evan's residence by Issac Truesdell. Mr. Patten also provided information that Truesdell had traded the weapon first to a man known only as "Jamar," who in turn had traded the weapon to "Emily." "Emily" had given the weapon to her boyfriend Jason Kivi. Mr. Patten or Mr. Evans also reported that they personally contacted the Defendant, who admitted having the weapon, but refused to return it. Finally, Patten provided information that Kivi lived in Nikiski with his mother.

Officer Whitehead of the Soldotna Police Department took the report from Evans and Patten. He ran computer checks on Truesdell and the Defendant, and discovered that the Defendant was on parole and not allowed to possess firearms.

Officer Whitehead made a request to the Kenai Adult Probation Office for assistance, and on the morning of July 13, 2005, provided Probation Officer Joseph Murphy a copy of the Soldotna Police Report on the theft of the weapon. P.O. Murphy is responsible for supervising the parole of the Defendant. The Defendant was on parole for robbery, and possession of a conceal able weapon after conviction for a felony offense. Exhibits 1 & 2.

After evaluating the information provided in the report, P.O. Murphy decided to contact the Defendant, and search the Defendant's vehicle and residence. The Defendant had specific conditions of parole restricting his possession of weapons and allowing for a search of his person, residence, and vehicles. Number 29 of the Defendant's "Conditions of Discretionary Parole" is titled "Search for Weapons" and states:

> Upon request by or at the discretion of a parole officer at any reasonable time, I will submit to a search of my person, my personal property, my residence, my vehicle, or any vehicle under my control, for the presence of deadly weapons as defined in AS 11.81.900(15).

Exhibit 3.

Under Alaska Statutes, Title 11, Chapter 81, Section 900, a "dangerous instrument" is "any deadly weapon or anything that, under the circumstances in

which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury."

P.O. Murphy, with assistance of P.O.'s Steve Meyer and James Howard, went to the Defendant's residence. When they arrived, the Defendant was in the shower, but the Probation Officers were let into the house by his mother. P.O.'s Meyer and Howard waited for the Defendant while P.O. Murphy searched his vehicle. When the Defendant came out of the shower, he was escorted to his room by the probation officers who searched the room, where P.O. Howard discovered a Bryco/Jennings .380 caliber semi-automatic handgun in the dresser. The gun was loaded and the serial number had been removed by a grinder or file.

P.O. Murphy asked the Defendant about the stolen IMI Baby Desert Eagle, and the Defendant eventually motioned toward a black rucksack in the hallway immediately adjacent to his bedroom. Inside the rucksack was the stolen handgun, matched by comparing the description and serial number.

P.O. Officer Murphy called the Alaska State Troopers to arrest the Defendant, transport him to correctional facilities, and take possession of the evidence. Trooper Cyr responded, and in the course of his duties, read the Defendant his Miranda rights. The Defendant agreed to talk to the Trooper. The

Defendant denied any knowledge of the stolen weapon, and claimed to have found the Bryco/Jennings .380 while riding his motorcycle on a nearby trail.

### B. Alleged Basis for Suppression

The Defendant seeks suppression of the evidence discovered in the search of his residence, as well as any subsequent statements on the ground that P.O. Murphy did not have reasonable suspicion to conduct a search of the Defendant's residence.

Defendant's motion should be denied because reasonable suspicion is not the required standard for searches under conditions of parole, and even if reasonable suspicion were required, the particularized information provided by known witnesses to Officer Whitehead, and subsequently to P.O. Murphy, meets that standard.

## II. ARGUMENT

### A. The Standard Under the Fourth Amendment for Search of a Parolee Based Upon their Consent as a Condition of Parole is Reasonableness, Balancing the Degree of Intrusion on Individual Privacy Versus the Degree to Which the Search is Needed for the Promotion of Legitimate Governmental Interests.

1. **In Cases Involving a Special Need, Including State Probation and Parole Systems, the Supreme Court has Consistently Applied a Balancing Test to Determine whether a Search Meets the Fourth Amendment Standard of Reasonableness.**

The Fourth Amendment to the United States Constitution protects the populace of the United States against "unreasonable searches and seizures." U.S. Const. Amend. IV. While the normal requirement for a search is for government agents to obtain a warrant based on probable cause, the courts have found situations where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Griffin v. Wisconsin, 483 U.S. 868, 873 (1987) (quoting New Jersey v. T.L.O., 469 U.S. 325, 351 (1985)). The operation of a probation system by state authorities is one of these situations of "special needs." Id. For purposes of Fourth Amendment searches, the Ninth Circuit Court of Appeals have treated parolees and probationers the same. U.S. v. Kincade, 319 F.3d 813, 817 n.2 (9th Cir. 2004).

In determining whether a search is reasonable, the Supreme Court has relied on a balancing test, "by assessing on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." U.S. v. Knights, 534 U.S. 112, 118-119 (2001) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)). Moreover, the Court has approached Fourth Amendment analysis by examining the totality of the circumstances. Ohio v. Robinette, 519 U.S. 33, 39 (1996).

Our examination of the privacy interests of parolees and probationers starts

with the recognition that probation and parole are forms of punishment. Thus, the privacy interests of the parolee or probationer are limited due to their own misconduct. Griffin at 874. Those in a probationary or parole status "do not enjoy 'the absolute liberty to which each citizen is entitled.'" Id. (quoting Morrissey v. Brewster, 408 U.S. 471, 480 (1972)). As part of the punishment, reasonable conditions that deprive the offender of some freedoms enjoyed by other law abiding citizens, such as consent to search, are appropriate. Knights at 119. Moreover, parole or probation conditions requiring consent to search "significantly" diminish the offender's reasonable expectation of privacy. Id. at 120.

As to the other side of the balance, the government's interests in a strong probation and parole system are vitally important. These systems protect the public, but also promote rehabilitation. Griffin at 875. The starting point is that a probationer or parolee is more likely than the average citizen to break the law. Id. at 880. In addition, because they are subject to reincarceration without a jury trial and benefit of proof beyond a reasonable doubt, they have a significant incentive to conceal criminal condict. Knights at 120.

The results of this balancing test slide even more strongly to the side of government interests where the search goes directly to the conduct that was the

basis for the previous conviction.  This makes the "special needs" found in <u>Griffin</u> even more compelling.  In <u>Griffin</u>, the Defendant, a previously convicted drug felon, was under probation for disorderly conduct, resisting arrest, and obstructing an officer. <u>Wisconsin v. Griffin</u>, 388 N.W.2d 535, 536 (Wis. 1986).  The Supreme Court determined that when probation officers received information from local police officers that Griffin possessed a gun, they had "reasonable grounds" under Wisconsin regulations to search Griffin's residence for firearms, which he was prohibited from possessing. <u>Griffin</u> at 880.

  The government's interest in the Defendant's case is even more compelling.  The Defendant is on parole for robbery and misconduct involving a weapon, specifically conceal able firearms.  Exhibits 1 & 2.  P.O. Murphy had a strong interest in protecting the public, as well as assuring that the Defendant was meeting his responsibilities as a parolee trying to reintegrate into society.  When faced with reasonable information from a police officer that the Defendant possessed contraband directly related to his past offenses, specifically a handgun, P.O. Murphy had a responsibility to confirm or refute that information.  The best tool at his disposal was a search of the Defendant, his residence, and his vehicle. This was agreed to by the Defendant as part of his conditions of parole, ending his incarceration short of the full term imposed by the judgment.  Exhibit 3. Moreover,

the search condition, as part of the Defendant's "Conditions of Discretionary Parole," was narrowly tailored as a search for weapons, based upon the Defendant's previous conviction for a weapons offense.

Under the balancing approach used in Griffin and Knight, the response of P.O. Murphy was reasonable under the requirements of the Fourth Amendment. In fact, the level of information available to P.O. Murphy was more than the level of information available to the probation officer in Griffin, which was specifically found to be reasonable by the Supreme Court. The probation officer in Griffin based his search on information from a police officer that Griffin "had or might have guns in his residence. Griffin at 878. There is no indication in the facts outlined by the Supreme Court that the probation officer was given the basis for the police officer's tip. Griffin at 871. Yet, the Supreme Court specifically found the level of information relied upon by the probation officer in Griffin to be reasonable: "..., we think it reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search." Griffin at 889-90.

In this case, P.O. Murphy had information from the Soldotna Police Department specifically identifying the Defendant being in possession of a handgun. This meets the standard in Griffin. However, P.O. Murphy also

understood the underlying basis of the information, including that the Defendant had admitted to Mr. Patten or Mr. Evans that he had a gun. This was more than sufficient information to make P.O. Murphy's search of the Defendant's residence reasonable under the Fourth Amendment.

> 2. **Neither the Supreme Court or the Ninth Circuit Court of Appeals have Held that the Reasonable Suspicion is Required to Search of a Probationer as a Condition of Parole or Probation**.

The Defendant offers the proposition that reasonable suspicion is required for a parolee or probationer search. Reasonable suspicion is the commonly known standard for "stop and frisk" searches by law enforcement officers under <u>Terry v. Ohio</u>. 392 U.S. 1 (1968). None of the cases cited by the Defendant accurately stands for that proposition.

First, Defendant cites <u>U.S. v. Knights</u>, 534 U.S. 112 (2001). The Supreme Court in <u>Knights</u> specifically declined to hold that reasonable suspicion is required for the search of a probationer or parolee. In looking at the facts of the case, the Supreme Court found that officers in Knights had reasonable suspicion, and the Fourth Amendment balancing of interests requires "no more than reasonable suspicion." <u>Id</u>. at 121 (emphasis added). Thus, the Court found no need to address the adequacy of lesser degrees of knowledge:

> We do not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy (or constituted consent, see supra, at 591) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. The terms of the probation condition permit such a search, but we need not address the constitutionality of a suspisionless search because the search in this case was supported by reasonable suspicion.

Knights at 120 n.6.

Further decisions on the standard were left for another day. Thus, Knights stands for continued use of the balancing analysis in Griffin. Knights at 118-122.

Nor is reasonable suspicion the standard within the Ninth Circuit Court of Appeals. U.S. v. Knights was a Ninth Circuit case taken by the Supreme Court, thus the balancing analysis of Knights and Griffin continues to control within the circuit. Knights at 112. Defendant cites the case of U.S. v. Crawford, 323 F.3d 700 (2003) as Ninth Circuit Court of Appeals precedent that reasonable suspicion is required for parolee searches. However, the Ninth Circuit Court of Appeals readdressed Crawford en banc and failed to adopt the reasonable suspicion standard of the three-judge panel. U.S. v. Crawford, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc). Instead, the majority of the panel affirmed the conviction on other grounds. Id.

In the en banc decision in Crawford, one concurring opinion and one dissenting opinion are also important to note. Three judges from the en banc panel dissented, taking the position the reasonable suspicion was the applicable standard. Crawford at 1092. Because this position was not adopted by the majority, it is not accurate to claim that the reasonable suspicion standard was a holding with precedential value within the Circuit. Moreover, a larger section of the panel, although not a majority, found a lower standard to be more appropriate. Judge Trott, writing for himself and four other members of the panel, concluded that while a parolee retains a right to privacy against government searches and seizures, that right can be limited to searches that are not arbitrary, capricious, or harassing. Crawford at 1072, 1075. This is a standard below reasonable suspicion, and clearly shows that any standard beyond the balancing analysis of Griffin and Knights is not established precedent within the Ninth Circuit Court of Appeals.

It is also important to note that the key cases cited by the Defendant are distinguishable on their facts from the case at hand. The searches in Crawford, and even Knights, were conducted by police officers as part of their law enforcement duties, not parole or probation officers as part of their supervisory responsibilities. Crawford at 1051; Knights at 589. In the Defendant's case, the search was conducted by P.O. Murphy, the Defendant's parole officer, as part of his supervisory duties.

P.O. Murphy was looking for firearms from an offender on parole for weapons violations and robbery. This is the essence of the government's "special needs" in supervising parolees and probationers. Griffin at 874-877. Thus, the Supreme Court's analysis and conclusions in Griffin is essential to analyzing this case:

> In some cases – especially those involving drugs or illegal weapons – the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society.

Griffin at 879.

    **B.**    **Even if Reasonable Suspicion were Required, the Law Enforcement Officers in this Case had More than Reasonable Suspicion to Search the Defendant's Residence.**

The basis for reasonable suspicion has been defined as "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting the particular person detained is engaged in criminal activity." U.S. v. Diaz-Juarez, 299 F.3d 1138, 1141 (9th Cir. 2002)(quoting U.S. v. Rodriguez, 976 F.2d 592, 594 (9th Cir. 1992), amended by 997 F.2d 1306 (9th Cir. 1993)). This has been shown to be a modest standard:

> The Fourth Amendment requires "some minimum level of objective justification" for making the stop.

U.S. v. Sokolow, 490 U.S. 1, 7 (1989) (quoting INS v. Delgado, 466 U.S. 210, 217).

> The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'"

Id. (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).

Reasonable suspicion is certainly less demanding than probably cause, and is even "considerably less than proof of wrongdoing by a preponderance of the evidence." Id. The Supreme Court has determined that reasonable suspicion cannot be reduced to a "neat set of legal rules." U.S. v. Arvizu, 534 U.S. 266, 274 (2002) (quoting Ornelas v. United States, 517 U.S. 690, 695-696 (1996)). Thus, courts making a reasonable suspicion determination must examine the totality of the circumstances in each case. Id. at 273.

To support a finding of reasonable suspicion, law enforcement officers must have a particularized and objective basis for suspecting wrongdoing. Id. This basis must be expressed in specific, articulable facts. Diaz-Juarez at 1141. The officers in this case has specific facts about a particular individual and his conduct that directly violated his conditions of parole. The basis for the decision to search Defendant's residence under his parole conditions was based on very specific facts provided by Mr. Evans and Mr. Patten. Officer Whitehead knew the exact nature of the wrongdoing, possession of a weapon by a convicted felon and parole. He knew the exact weapon. He knew the exact path of how the weapon had reached the Defendant.

He knew each of the individuals who had participated in that chain. He knew that the witnesses were able to provide specific information about the Defendant's location, and that he lived with his mother. Finally, Officer Whitehead knew that one of the individuals had confronted the Defendant, who admitted he had the weapon. There were no hunches or general knowledge required to make this determination. This specific, particularized set of facts added up to reasonable suspicion, and a responsibility for the parole officer to investigate.

The Defendant has questioned the reliability of the information provided by the witnesses. However, the officers are not required to have information meeting a higher standard, such as probable cause:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Alabama v. White, 469 U.S. 325, 330 (1990).

A key factor in many of the decisions analyzing reasonable suspicion is the identity of witnesses providing information. Information supporting a law enforcement officers determination of reasonable suspicion can come from another person, not just the observations of the officer. Adams v. Williams, 407 U.S. 143,

147 (1972). Information provided by a clearly identified witness presents a stronger case than information from an anonymous tip. Id. 146-147. Face to face witnesses provide greater indicia of reliability than anonymous tipsters. Officers dealing with a face to face witness can assess their credibility and demeanor. U.S. v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000). Moreover, a face to face witnesses can be held accountable for false information and accusations. Id. A face to face witness also exposes themselves to potential reprisal by providing information to law enforcement officers. Id. An unquestionably honest witness can provide reasonable suspicion on their information alone. U.S. v. Dorais, 241 F.2d 1124, 1130-31 (9th Cir. 2001).

The information in this case was provided by two witnesses, Mr. Evans and Mr. Patten, who both met face to face with Officer Whitehead, an experienced law enforcement officer. They identified themselves, thus making them accountable for any false statements or false accusations. He was able to evaluate their demeanor, and determined that the information they passed was credible.

Information obtained by Officer Whitehead was passed to P.O. Murphy and appropriately used by Murphy in his determination to search the Defendant's residence. Information from law enforcement officers may be relied upon by other law enforcement officers as a basis for reasonable suspicion. U.S. v. Hensley, 469 U.S. 221, 232. If the officer providing the information has reasonable suspicion, the

officer acting on the information is deemed to have reasonable suspicion. Id.

The cases relied upon by the Defendant on this issue can again be distinguished on their facts. The Defendant primarily relies on Florida v. J.L., 529 U.S. 266 (2000). In J.L., the police reacted to a completely anonymous phone tip, with no other supporting indicia of reliability. In the Defendant's case, the information was provided by witnesses who were identified in face to face meetings with the Officer Whitehead, allowing the officer to determine their credibility. They provided specific, particularized information, including that the Defendant had spoken to Mr. Patten or Mr. Evans and admitted having the weapon in question.

Again, in determining whether the search by P.O. Murphy meets the Fourth Amendment standard of reasonableness, this case is best analyzed by comparison with the facts in Griffith v. Wisconsin. The Supreme Court in Griffin, using the Fourth Amendment balancing test, determined that a probation officer's search of a probationer's residence for weapons, based on information provided by a police officer, was reasonable. Griffin at 889-90.

### III. CONCLUSION

Using the Supreme Court balancing analysis of Griffin and Knights, the government's interest in maintaining an effective parole system that protects the public allows for searches of parolees as a condition of parole. The facts in this case

meet that Fourth Amendment standard of reasonableness. The balancing of interests between the individual and the government is the proper analysis under Supreme Court case law and within the jurisdiction of the Ninth Circuit Court of Appeals. Reasonable suspicion is not the requirement. Even if reasonable suspicion was required, the particularized and specific information obtained from face to face witnesses in this case meets that standard.

The Government requests that the Defendant's Motion to Suppress be denied.

RESPECTFULLY SUBMITTED this 27th day of January, 2006, at Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/Bryan Schroder
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99507
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: bryan.schroder@usdoj.gov
WA# 21146

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27th, 2006, a copy of the foregoing **GOVERNMENT'S OPPOSITION TO DEFENDANT KIVI'S MOTION TO SUPPRESS STATEMENTS**, was served, via fax, on:

**Richard W. Wright**
250 Cushman Street, Suite 500
Fairbanks, AK 99701

s/Bryan Schroder

US v. JASON KIVI
3:05-cr-106-JWS                    18