UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>JASON PAUL ONIS KING KIVI,<br><br>        Defendant. | 3:05-cr-00106-JWS-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION TO SUPPRESS<br>Evidence and Defendant's<br>Statements**<br><br>(Docket No. 13) |

Defendant **Jason Kivi** moves to suppress as evidence two guns obtained as a result of a warrantless search of his home by his parole officer in addition to his statements made following that search. Docket No. 13. The motion is opposed by the government. Docket No. 16. The defendant argues that the

warrantless search of the residence violated the Fourth Amendment to the U.S. Constitution. He argues that the parole officer lacked "reasonable suspicion" to conduct the warrantless search and that his statements to the law enforcement officers should be suppressed as fruits of the poisonous tree. The government responds by arguing that Officer Murphy had reasonable suspicion to conduct the parole search and under the totality of the circumstances the search met the special needs doctrine exception to the Fourth Amendment. For reasons stated below ***I recommend that the court adopt findings of facts and conclusions of law denying the motion to suppress.***

## Findings of Fact

On July 13, 2005 Alaska Probation/Parole Officer Joseph Murphy with the Kenai Adult Probation Office conducted a warrantless search of Jason Kivi's residence. During the search, Officer Murphy located two firearms which form the basis of the current federal charges pending against Kivi. At the time of the search Parole Officer Murphy was responsible for supervising the parole of Kivi. Kivi had been convicted for the offenses of robbery in the second-degree, misconduct involving weapons in the third-degree and witness tampering in the first-degree. *See* Judgment in <u>State v. Jason Kivi</u>, 3AN-S98-4352CR before the Superior Court for the Third Judicial District at Anchorage, copy attached to the government's opposition brief.

At the time of the search Kivi was on discretionary parole with the Alaska Board of Parole. Kivi had been released early from incarceration and agreed to the conditions of discretionary parole. His conditions of discretionary parole included Condition No. 29 which provided as follows:

> <u>Search for weapons</u>: Upon request by or at the direction of a Parole Officer at any reasonable time, I will submit to a search of my person, my personal property, my residence, my vehicle or any vehicle under my control, for the presence of deadly weapons as defined in AS 11.81.900(15).

Mr. Kivi was unambiguously informed of the search condition of his parole. Officer Murphy discussed the conditions of discretionary parole with Kivi and had him initial each condition discussed including No. 29. Alaska Statute 11.81.900 defines a "dangerous instrument" as "any deadly weapon or anything, that under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury."

Parole Officer Murphy's decision to conduct a search at Kivi's residence for firearms was based upon a police activity log he had received July 12, 2005 from the Soldotna Police Department on which he noticed Kivi's name. At Murphy's request the next day he received a copy of the police report from Soldotna Police

Officer Johnny Whitehead. That report indicated to Officer Murphy that Kivi may be in possession of a firearm and may have been "in touch with the wrong people." The police log and report identified the firearm as an Israel's Military Industries (IMI) "Baby Desert Eagle" .45 ACP semi-automatic handgun associated with Kivi.

The police report reflected that on July 11, 2005, Mr. Ethan Evans reported the theft of his "Baby Desert Eagle" .45 caliber handgun to the Soldotna police after personally coming to the police station. He reported that the weapon and loaded magazines had been stolen from his home in late May 2005. Mr. Evans had been accompanied by Mr. Robert Patten, who provided specific information that the weapon had been taken from Mr. Evans' residence by Isaac Truesdell. Mr. Patten also provide information that Truesdell had traded the weapon to "Jamar," who in turn had traded the weapon to a young lady named "Emily," who had given the weapon to her boyfriend, Jason Kivi. The report reflected that either Patten or Evans had personally contacted Kivi who admitted having the weapon but refused to return it. Patten also provided information that Kivi lived in Nikiski with his mother. Officer Whitehead knew Mr. Pattan and considered him trustworthy. The police officer learned from a computer check that Kivi was on probation and not suppose to possess firearms. The officer informed the Kenai Adult Probation Office.

Parole Officer Murphy contacted Soldotna Police Officer Marvin Towell who then mailed a copy of the police report to Murphy. Emily King was known to

Officer Murphy. She had a reputation with law enforcement officers as a person suspected of illegal drug involvement. Officer Murphy did not know Isaac Truesdell personally but knew about his criminal record. Officer Murphy had previously supervised Jamar Howard and knew that in the past he had lied to officers. Soldotna is a small community with about 2,500 year-round residents. Officer Murphy assumed that all of the people in the chain of the firearm knew each other.

Acting on the above information PO Murphy conducted a warrantless search of Kivi's residence with the assistance of Probation Officers Steve Meyer and James Howard. The parole officers were let into the house by Kivi's mother. When Kivi came out of the shower he was escorted to a room by the officers who searched the room and found a .380 caliber semi-automatic hand gun in a closet.

Officer Murphy asked Kivi about the stolen IMI Baby Desert Eagle. As they proceeded out of a bedroom Kivi kicked a ruck sack he was packing to take to work. Inside the ruck sack Officer Murphy found a Baby Desert Eagle which matched the description and serial number of the weapon reported stolen by Ethan Evans. Evans had furnished the serial number to the police.

Officer Murphy called the Alaska State Troopers who responded and took Kivi into their custody. The troopers read Kivi his <u>Miranda</u> rights. Kivi waived his rights and made statements to the troopers which Kivi now seeks to suppress as derivative of the warrantless search.

## Discussion

Kivi's reasonable expectation of privacy was significantly diminished while he was on parole. Courts have recognized that a probationer or parolee is more likely than others to violate the law. <u>Griffin v. Wisconsin</u>, 483 U.S. 868, 880 (1987). In <u>Griffin</u> the Supreme Court addressed the "special needs" rationale in a situation that at least on its surface seemed to have a clear law enforcement context. At issue in <u>Griffin</u> was a warrantless search of a probationer's home, instigated and carried out under the direction of law enforcement officials pursuant to a Wisconsin regulation that had replaced the standard of probable cause by "reasonable grounds." The regulation permitted any probation officer to search a probationer's home without a warrant as long as his supervisor approved and as long as there were "reasonable grounds" to believe the presence of contraband.

The facts underlying <u>Griffin</u> were that a detective in the Beloit, Wisconsin Police Department had contacted Griffin's probation officer's supervisor with information that Griffin might have weapons in his apartment. The supervisor enlisted another probation officer for assistance and accompanied plain clothes policemen to Griffin's apartment. The search uncovered a weapon, and Griffin was arrested and charged with possession of a firearm by a felon. Griffin moved to suppress the evidence uncovered during the warrantless search of his residence. In discussing the appeal the Supreme Court justices explained that the conditions

of probation or parole are meant to serve as a period of genuine rehabilitation and ensure that the community is protected while the probationer or parolee remains at large. These goals require and justify the exercise of supervision to assure that the restrictions are in fact observed.

Although these "special needs" do not operate wholly to eliminate the Fourth Amendment rights of the person being supervised they do necessitate a relaxation of the usual warrant and probable cause requirement. *Id.* at 876. The court continued that in cases involving drugs or illegal weapons the probation agency must be able to act (expeditiously) based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. *Id.* at 879. The Griffin court concluded that the U.S. Constitution permits execution of probation and parole searches based on no more than reasonable suspicion even where the search at issue is triggered by law enforcement information. *Id.* at 880. Kivi argues that the instant case is governed by United States v. Knights, 534 U.S. 112, 122 S.Ct. 587 (2001). At issue in Knights was a warrantless search of a probationer long suspected of having committed crimes targeting a commercial facility. After Knights was placed on probation for an unrelated drug offense, an arson targeting the same commercial enterprise caused extensive damage. Acting on a hunch that Knights may have been involved a sheriff's deputy established surveillance of Knight's

apartment.  Late one night the deputy observed Knight's suspected accomplice leave the apartment carrying three cylindrical items toward a nearby waterway.  The deputy suspected that the cylindrical items could serve as potential pipe bombs.  The deputy heard the items splash in the water and watched the alleged accomplice return empty handed to the residence before driving away.  The deputy followed the accomplice and after the accomplice parked his vehicle the deputy observed explosive materials that matched the description of those removed from the commercial enterprise.  The deputy was aware that Knight's probation required him to submit to warrantless suspicion less searches of his person and residence at any time.  The deputy promptly executed a warrantless search of Knight's home and in the process discovered explosive making paraphernalia.

   Knights argued that <u>Griffin</u> sanctioned only purely probationary searches undertaken with non law enforcement motivations. Knights argued that the search of his residence was impermissible because it had been motivated solely by law enforcement objectives and was executed by law enforcement officers only.  The Supreme Court rejected that argument.  <u>Knights</u>, 534 U.S. at 117-18.  The <u>Knights</u> court applied the traditional totality of the circumstances test in balancing the invasion of Knights' interest in privacy against the state's interest in searching his home without a warrant supported by probable cause.  The Supreme Court explained that Knights's status as a probationer subject to a search condition

informed both Knights and the state of that balance. *Id.* at 119. The Knights court held that the government needed no more than reasonable suspicion to conduct a search of a probationer's house. *Id.* at 121.

In Knights the Supreme Court revisited the issue of warrantless searches of probationer's residences in the context of investigatory rather than probationary purposes. Knights upheld a search that was supported by reasonable suspicion and authorized by a search condition that was not limited to probationary searches. 534 U.S. at 116. In the instance case a search of Kivi's residence was conducted by probation/parole officers. It was conducted for a probationary purpose although one that could necessarily lead to new criminal charges based upon the possession of a stolen firearm. Whether the court applies Griffin or Knights the same standard of reasonable suspicion is still applicable.[1]

The court now turns to the issue of whether there was reasonable suspicion to conduct a search. Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring "articulable reasons" and "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *See* United States v. Cortez, 449 U.S. 411, 417-18 (1981). Kivi was on

---

[1] Kivi does not challenge the probation search policy of Alaska State law. Under AS 33.05.070 a probation/parolee can be arrested "for cause" without a warrant pursuant to AS 12.55.080. The Alaska State law appears reasonable under the Fourth Amendment.

parole for misconduct involving a weapon, specifically a concealable firearm. The tip that Kivi possessed a particular stolen firearm came not from anonymous tipsters but from an individual (Ethan Evans) who reported the theft of his firearm to Soldotna Police. Thus, there existed an articulable objective fact that a particular firearm had been stolen recently from Mr. Evans. The tip as to where the weapon might be found was provided by Robert Patten who accompanied Mr. Evans to the police department. Mr. Patten had determined that the firearm was in the possession of Jason Kivi, the defendant herein. Significantly, either Mr. Patten or Mr. Evans had also reported that they personally contacted Jason Kivi who admitted having the weapon but refused to return it. Mr. Patten's tip was not anonymous; he was subjecting himself to sanctions for providing false information to the police if that turned out to be the case. From Mr. Murphy's point of view it did not matter how Jason Kivi acquired the firearm or whether it had been stolen; if Kivi possessed the firearm then he was in violation of his parole.

      The credibility of the tipster, Robert Patten, was bolstered by the fact that Evans' firearm had indeed been stolen, according to Evans and Patten Kivi had essentially admitted having the firearm. Mr. Patten had previously reported to a local police officer (Whitehead) other crimes, namely two DWI's and this information had been reliable. PO Murphy determined that Truesdell had stayed with Patten a couple of days in the past and this would have provided him access to steal the

firearm. Although Officer Murphy's independent corroboration of the tip was limited, he knew the people referenced in the tip.

From the evidence I conclude PO Murphy had reasonable suspicion to conclude Kivi was in possession of a firearm. Mr. Patton's information traced the manner in which the firearm had been traded from the initial thief to Kivi's girlfriend and then to Kivi. That information appeared to be reliable since either Patten or Evans claimed to have talked to Kivi, who rather than denying any knowledge about the firearm, "refused to return it." The persons in the chain of possession of the firearm were known to Officer Murphy and it appeared logical and reasonable that the firearm could have passed through their hands. These facts and reasonable inferences drawn by Officer Murphy were adequate to constitute reasonable suspicion that Kivi was in possession of the stolen firearm. Compare, Griffin, wherein the Supreme Court found that the level of information relied upon by the probation officer was reasonable (". . . we think it reasonable to permit information provided by a police officer, whether or not on the basis of first hand knowledge, to support a probationer search.") Griffin at 889-90. Thus, there is no need to address the adequacy of a standard less than reasonable suspicion.

Kivi cites United States v. Crawford, 323 F.3d 700 (9th Cir. 2003). The facts of Crawford are materially distinguishable from the instant case. In Crawford the court of appeals held that a parole search of a parolee's home was

constitutionally unreasonable where law enforcement officers did not have reasonable suspicion that the parolee was engaged in continuing criminal activity or that evidence of a two year old bank robbery might be found in his home.  That court noted that the officers conducting the search did not expect to find evidence of a crime on the premises but thought the search would help pressure the parolee into talking about his role in the unsolved robbery.

The touchstone of the Fourth Amendment is reasonableness.  Florida v. Jimeno, 500 U.S. 248, 250 (1991).  Parolees are treated the same as probationers for purposes of Fourth Amendment searches.  United States v. Kincade, 379 F.3d 813, 817 n.2 (9th Cir. 2004).  In order to determine if a parole search is objectively reasonable, the court is required to balance the privacy interest of a parolee against the government's interest in the search.  Knights, 534 U.S. at 118.  It is axiomatic that Kivi's expectation of privacy in his own home is not wholly defeated by virtue of his parole status.  Griffin, 483 U.S. at 873.  In examining the totality of the circumstances the parole search condition is a salient circumstance.  Knights, supra at 118.  Here, the parole officer had reasonable suspicion that Kivi possessed a firearm in violation of his probation/parole status as well as by knowingly possessing a stolen weapon.

//

//

## Conclusion

I conclude that Officer Murphy had specific articulable facts which together with objective and reasonable inferences met the minimal level of objective justification for suspecting that Kivi had violated his parole justifying a warrantless search of his premises to sustain or relay that reasonable suspicion. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Alabama v. White, 496 U.S. 325, 330 (1990).

A determination of reasonable suspicion need not be based upon the observations of a law enforcement officer only. Adams v. Williams, 407 U.S. 143, 147 (1972). Officer Whitehead's face-to-face encounter with the tipster allowed him to assess the demeanor and basis for the tip. The State of Alaska has an interest in maintaining an effective parole system that protects the public and assures that a parolee is abiding by his conditions of release. PO Murphy articulated something more than "an isolated and unparticularized suspicion or 'hunch'". Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883 (1968). The particularized and specific information obtained by Officer Whitehead and conveyed to the probation/parole officer was sufficient to support the warrantless search by the probation/parole officer meeting the reasonableness standard under the Fourth Amendment. For these reasons the defendant's motion to suppress should be denied. IT IS SO RECOMMENDED.

//

DATED this   10th   day of February, 2006, at Anchorage, Alaska.


   /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge


Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Thursday, February 16, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Wednesday, February 22, 2006**.  The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).