M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>JASON PAUL ONIS KING KIVI,<br><br>　　　　　　Defendant. | Case No. 3:05-cr-0106-JWS<br><br>**DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATION REGARDING MOTION TO SUPPRESS EVIDENCE AND DEFENDANT'S STATEMENTS** |

Defendant, Jason Paul Onis King Kivi, by and through counsel M. J. Haden, Staff Attorney, submits the following objections to the Magistrate Judge's recommendation regarding Motion to Suppress Evidence and Defendant's Statements.

**I.	Introduction**

Mr. Kivi is in agreement with the court's finding that a warrantless search of an individual on parole/probation must be based on "reasonable suspicion" under Griffin v. Wisconsin, 483 U.S. 868 (1987), and United States v. Knights 534 U.S. 112 (2001). However, Mr. Kivi objects to the following factual findings made by the court and submits

that evidence presented to the court during the suppression hearing fails to meet the reasonable suspicion standard.

## II.    Information Received by Law Enforcement

The recommendation correctly states that on July 11, 2005, Mr. Evans reported the theft of his handgun. The recommendation indicates that Mr. Patten, who accompanied Mr. Evans during his visit to the police department, provided "specific information" that the weapon was stolen by Isaac Truesdale. Recommendation [RR] at 4. However, the recommendation fails to correctly report what Evans told the police and what Evans knew, or more importantly did not know, about the information he relayed to the police. The information that Evans told the police officer was that he had spoken with Emmy King and that she heard that Issac Truesdale had taken the weapon from the residence and traded it to a person known only as Jamar or Lamar. Patten further told police that King told him that Jamar or Lamar had traded the firearm to a woman named Emily and that Emily had given the firearm to her boyfriend Jason Kivi. RR at 52, Exhibit A Recording of Patten's Interview with Police. Mr. Patten did not report how King knew the information. Neither the police officer, nor the probation office had any idea of the basis of King's allegations or her motivation for disclosing the information to Patten. RR at 16, 51. However, the probation officer was aware that King was a known drug suspect, that Truesdale had a lengthy criminal record, and that Jamar had given false information to the police in the past and had personally lied to the probation officer. RR at 46, 47, 49, 50.

**III.     Credibility of Patten**

The court relies on the fact that Patten had given the police truthful information in the past and that Officer Whitehead considered him trustworthy. RR at 4. The court goes on to state that Patten's information is credible because he was subjecting himself to sanction for providing false information to police if his statement turned out not to be true. RR at 10. The court's reliance on these issues is incorrect.

First, the fact that Whitehead had past dealings with Patten and considered him reliable has no bearing on the probation officer's assessment of reasonable suspicion, as this information was never passed on to the probation officer. The probation officer had no prior contact with Patten and no way of assessing his credibility.

Although Patten personally reported to the police officer and was known to him, he did not expose himself to sanction if his information turned out to be false. His information was that he had talked to King and that she had provided the following information to him. This was his only statement to law enforcement. If the information relayed by King was false, Patten would suffer no consequences. In fact, the police officer attempted to contact King, the source of the information, to verify her story but was unable to do so. RR at 9.

**IV.     Information Concerning Direct Contact With Kivi**

The magistrate relies heavy on the fact that either Patten or Evans had direct contact with Kivi, who allegedly admitted to possessing the firearm in question. The evidence does not support this fact.[1] RR at 4, 10, 11.

---

[1] Mr. Kivi also objects to the court's finding that Mr. Kivi knew King, Truesdale, and Jamar. There is no support in the record to sustain this conclusion.

The police officer testified that, "He [Patten] stated that Mr. Kivi had been contacted and refused to give the weapon back." RR at 8. However, the officer admitted that he did not know who was alleged to have contacted Kivi. RR at 26. The probation officer testified as follows:

> Q. And the information that you had that someone had spoken directly to Mr. Kivi, you don't know who that person was, do you?
>
> A. Well, I think it was this Patten fellow in the police report. Let's see. Well, it appears that Mr. Patten had spoken with someone who had spoken who allegedly had spoken with Mr. Kivi.
>
> Q. So according to the police report you don't' know who spoke to Mr. Kivi?
>
> A. No., only that Mr. Patten made some contact with the folks that we just mentioned and they apparently spoke with Mr. Kivi.

RR at 50, 51. The court's conclusion that it was Patten or Evans that allegedly spoke with Kivi is incorrect.

## V.     Probation Officer's Criteria For Search

It is clear from the probation officer's statements that he believed that he did not need to have reasonable suspicion to justify the search and, therefore, did not assess the information he received under the reasonable suspicion standard. The probation officer stated, "[A]n anonymous phone call would've been enough for be to go out to Mr. Kivi." RR at 43. He also testified as follows:

> Q. Okay, so looking at the police report you don't really know how anybody gathered this information other than the phone call to Mr. Patten?
>
> A. No, I don't . . . [T]hat's not a concern for me in my position. An allegation could've been made . . . by anybody, and I would still have proceeded out to Mr. Kivi's residence regardless of who said what or where it came from. Like I say, if I had received an anonymous phone call I'd've been out to Mr. Kivi's house.

4

RR at P53. His assessment of the information would have not met the standard for reasonable suspicion under Florida v. J.L., 529 U.S. 266 (2000).

**VI.    Conclusion**

In this instance, the court has correctly stated that the probation officer's search must be based on reasonable suspicion. Here, the uncorroborated second-hand information from an individual known to be a drug trafficker does not meet that standard. The probation officer did not know how King had obtained the information she relayed to Patten. He did not know if it was first-hand information or information she had been told by yet another person. United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000) ("Courts will uphold an investigatory stop based on a tip or other secondary information only when the information possesses sufficient indicia of reliability that are independently corroborated by the police."). The information received by the Soldotna Police "provided no predictive information and therefore left the police without means to test the [tipster's] knowledge or credibility." Id. at 1380.

Thus, Mr. Kivi respectfully requests that the relief sought in the Defendant's Motion to Suppress be granted.

///

///

///

///

///

///

///

5

DATED this 16th day of February, 2005.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Georgia Bar No. 316531
550 West 7th Avenue, Suite 1600
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mj_haden@fd.org

Certification:

I certify that on February 16, 2006, a copy of the foregoing document was served electronically on:

Bryan Schroder, Esq.

/s/ M. J. Haden