DEBORAH M. SMITH
Acting United States Attorney

BRYAN SCHRODER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: bryan.schroder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 3:05-cr-106-JWS |
| ) | |
| Plaintiff, ) | **GOVERNMENT'S TRIAL** |
| ) | **MEMORANDUM** |
| v. ) | |
| ) | |
| JASON PAUL ONIS KING KIVI, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I. INTRODUCTION

The defendant is charged with two counts of felon in possession of a firearm. Trial is set to begin on Monday, February 27, 2005. The government's case in chief should take no longer than one day.

## II. STATEMENT OF THE CASE

### A. Case Summary

On June July 11, 2005, Ethan Evans came into the Soldotna Police Department and reported a stolen gun. The weapon was an Israeli Military Industries (IMI) "Baby Desert Eagle" .45 caliber semi-automatic handgun. He also reported the serial number of the weapon as 33311082. Mr. Evans was accompanied by a friend, Robert Patten, who had additional information about the stolen weapon. Mr. Patten's information included that the Defendant, Jason Kivi, had the gun in his possession. The officer at the Soldotna Police Department ran a computer check on the Defendant and discovered that he was currently on parole and probation with the State of Alaska, and was not allowed to possess firearms. The officer passed information on the stolen gun to the Kenai Adult Probation Office, which was responsible for supervising the Defendant's probation and parole.

The Defendants parole and probation officer, Joseph Murphy, received the information and decided that it was appropriate to interview the Defendant, and search his residence and vehicle. There was a specific condition of parole for the Defendant allowing probation and parole officers to search the Defendant's person, residence, and vehicles for firearms. The Defendant was on parole for offenses that included robbery and misconduct involving weapons.

Parole Officer (PO) Murphy, accompanied by PO's Steve Meyer and James Howard, went to the Defendant's residence on July 13, 2005. The Defendant's mother let the agents into the home and informed them that the Defendant was in the shower, preparing to leave for work in Tyonek. PO Murphy directed PO's Meyer and Howard to wait for the Defendant. PO Murphy proceeded to search the Defendant's vehicle, and found nothing in violation of the conditions of parole.

When the Defendant came out of the shower, PO Meyer advised him of the search and allowed him to dress. PO's Meyer and Howard then searched the Defendant's room. In a dresser, PO Howard found a Jennings/Bryco Arms .380 caliber semi-automatic handgun. The serial number of the weapon had been obliterated by some form of grinding. The weapon was loaded, but was cleared by PO Howard. When PO Murphy entered and was briefed about the finding the .380, he asked the Defendant for the location of the IMI Baby Desert Eagle. The Defendant asked to speak to PO Murphy privately.

When alone, the Defendant asked what would happen to him. PO Murphy advised him that he would be arrested for a parole violation, but he could spare his mother more difficulty by telling them where the stolen weapon was located. The Defendant then got up from his seat, stepped to the doorway, and motioned

to a black rucksack immediately outside the door. The officers understood that the rucksack contained the Defendant's personal belongings that he takes to work. They had not searched the rucksack yet, but would have examined it if the search had continued. In the rucksack, PO Murphy found the IMI Baby Desert Eagle, which matched the description and serial number provided by Ethan Evans.

PO Murphy then contacted the Alaska State Troopers to transport the Defendant to a confinement facility and take custody of the evidence. When Trooper John Cyr arrived, he read the Defendant his <u>Miranda</u> rights, and asked him about the firearms. The Defendant claimed to have found the Jennings/Bryco .380 on a trail while riding his motorcycle. He claimed no knowledge of the IMI Baby Desert Eagle. He then asked to speak to his attorney, and the interview ended.

### B. Statement of Facts

At trial, the United States intends to present the following evidence as regards the July 13, 2005 discovery of firearms in the possession of the defendant:

1. The Defendant has been convicted in Alaska for Robbery in the First

Degree, Misconduct Involving Weapons in the Second Degree, and Sexual Assault Involving a Minor, all crimes punishable by imprisonment for a term exceeding one year;

    2.    That the Defendant knew from his terms of parole that he was not allowed to possess firearms;

    3.    That on July 13, 2005, the Defendant's Parole Officer obtained information that the Defendant may be in possession of a firearm, specifically an IMI Baby Desert Eagle .45 caliber semi-automatic handgun;

    4.    Based upon that information, the Defendant's Parole Officer decided to search the Defendant's residence, vehicles, personal property, and person;

    5.    PO Murphy, along with PO's Steve Meyer and James Howard, searched the Defendant's residence, his mother's home;

    6.    The PO's were let into the residence by the Defendant's mother;

    7.    PO's Meyer and Howard searched the Defendant's bedroom, while PO Murphy searched his vehicle;

    8.    During the search of the bedroom, PO Meyer found a Jennings/Bryco Arms .380 caliber semi-automatic handgun in a dresser;

    9.    The serial number of the Jennings/Bryco Arms .380 had been

obliterated by some form of grinding.

10. After PO Murphy asked the Defendant about the location of the IMI Baby Desert Eagle, the Defendant used his foot to point to a black rucksack.

11. In the rucksack was an IMI Baby Desert Eagle .45 caliber semi-automatic handgun.

12. The black rucksack had been identified by the Defendant's mother as the pack he carries when he goes to work.

13. The PO's called the Alaska State Troopers to take possession of the weapons and to transport the Defendant to confinement for parol violations

14. Trooper John Cyr read the Defendant his <u>Miranda</u> rights, and asked him about the weapons.

15. The Defendant admitted finding the Jennings/Bryco Arms .380 caliber handgun on a trail while riding his "dirt bike."

16. The Defendant denied any knowledge of the IMI Baby Desert Eagle.

    **C.**     **Summary of the Charges**

Defendant, Jason Kivi, is charged in the Indictment with two counts of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

### D.  Witnesses

At trial, the government will call some or all of the following:

1. One or more of the local and federal law enforcement officers who were involved in the investigation of this case or who were involved in the arrest of the defendant;

2. One or more of the local probation officers who were involved in the investigation of this case or who were involved in the arrest of the defendant;

3. An expert on firearms who will testify about the nature of the firearms at issue and who can establish the interstate nexus.

### E.  Exhibits

The government will offer some or all of the following exhibits at trial:

1. Firearms and related exhibits.

2. Defendants conditions of probation.

3. Certified documents related to the defendant's criminal history.

## III.  LEGAL/EVIDENTIARY ISSUES

### A.  Expert Witness Testimony

### General Standards

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence. Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not admissible into evidence. Rule 703, Fed. R. Evid.

An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704. The court has broad discretion to determine whether to admit expert testimony. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987); United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985).

The government has provided written notice to the defendant of its intention to elicit expert opinion testimony from a firearms expert from ATF.

### B.  Limits of Relevant Defenses

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also, United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S. 908. The trial court has broad discretion in determining admissibility

under Rule 403.  United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976).

An area of common exclusion involves attempts to confuse the issues or mislead the jury by introducing evidence of matters that do not establish a defense to the charged crimes.  See, United States v. Tidwell, 559 F.2d 262, 266-7 (5th Cir. 1977), cert. denied, 435 U.S. 942 [excluding evidence that defendant's manipulation of bank funds was beneficial to bank on grounds of danger of confusion of issues and misleading jury where belief in benefit to bank was not a defense to misapplication of funds]; United States v. Johnson, 558 F.2d 744, 746-47 (5th Cir. 1977), cert. denied, 434 U.S. 1065 [excluding evidence of purported overpayment of taxes in fraudulent tax return prosecution on grounds of confusion of issues and improper appeal to emotions of jury].

In addition, although the Ninth Circuit has long recognized that juries have the power to acquit a defendant regardless of the evidence of his guilt, (see, United States v. Simpson, 460 F.2d 515, 518-19 (9th Cir. 1972)), it has never recognized a right held by a defendant to seek such a verdict.  United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991).  Thus, because a defendant has no right to seek nullification, he has no right to present evidence relevant only to

such a defense. See, Zal v. Steppe, 968 F.2d 924, 930 (9th Cir.), Trott, J., concurring, cert. denied, 113 S.Ct. 656 (1992).

### C. Admissible Evidence

It is a fact that at the time of his arrest on July 13, 2005, the defendant was parole from the State of Alaska. Under the conditions of his parole, he was not allowed to possess firearms, and he was subject to search of his person, personal property, residence and vehicles to look for firearms.

It is essential to establish the motive of the probation officers who searched the defendant's residence on July 13, 2005. Therefore, the government does intend to establish the fact that the officers acted lawfully when they searched the defendant's residence on July 13, 2005.

The Supreme Court has recognized the Government's need to present a reasonable picture of the events to the jury:

> Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.

Old Chief v. United States, 519 U.S. 172, 188 (1997).

    RESPECTFULLY SUBMITTED this 21st day of February, 2006,

at Anchorage, Alaska.

                DEBORAH M. SMITH
                Acting United States Attorney


                s/ Bryan Schroder
                Assistant United States Attorney
                222 West Seventh Avenue, #9
                Anchorage, Alaska  99513-7567
                Phone: (907) 271-5071
                Fax: (907) 271-1500
                E-mail: bryan.schroder@usdoj.gov


I hereby certify that on February 21, 2006,
a copy of the foregoing was served
electronically on:

MJ Haden
s/ Bryan Schroder

U.S. v. JASON KIVI
CASE NO. 3:05-cr-106-JWS